No. 4196

Second Circuit

---

CUNNINGHAM ET AL. v. JORDAN DRILLING CO., INC.

---

(January 14, 1932. Opinion and Decree.)
(February 16, 1932. Rehearing Refused.)

---

Shotwell & Brown, of Monroe, attorneys for plaintiffs, appellees.

Stubbs & Thompson, of Monroe, attorneys for defendant, appellant.

STEPHENS, J. The plaintiff, for the benefit of herself as the alleged surviving widow of John Y. Cunningham, and her three children, one the issue of a former marriage and two the issue of her alleged marriage to Cunningham, brings this suit to recover of the defendant compensation for the death of her husband, who, at the time of his death, was an employee of defendant company, performing services for it in the course of his employment, and earning a weekly wage of $35.

The defendant, in its answer, admitted the death of its employee John Y. Cunningham; that he was performing services for it in the course of his employment at the time he met with the accident resulting in his death; that he was earning the weekly wage alleged; but denied liability for compensation on the ground that Lula Mae Cunningham and John Y. Cunningham were never married; and that therefore she has no right or cause of action against defendant for compensation for herself and/or for the benefit of her children.

The trial of the case resulted in a judgment in favor of plaintiff in the sum of $6,000, payable at the rate of $20 per week for a period of 300 weeks.

The defendant prosecutes this appeal.

The record discloses that the plaintiff was first married to Sam Bryant Watson on July 14, 1924. That marriage was dissolved by a decree of court on January 11, 1926. On February 8, 1926, the plaintiff married C. J. Cantrell in Union county, Arkansas, with whom she lived until some time in June, 1926, at which time she left C. J. Cantrell in El Dorado, Arkansas, and went to West Monroe, Louisiana. She lived in a rooming house there until the latter part of August, 1926. John Y. Cunningham, whom the plaintiff had known in El Dorado, lived at the same rooming house in West Monroe, Louisiana, until about the middle of August, 1926, at

which time he went to Beaumont, Texas, where he had secured employment. After remaining in Beaumont a week or ten days he requested the plaintiff by letter to join him there and marry him. This the plaintiff testified she did.

She testified on direct examination that John Y. Cunningham met her at the train and took her to the place where he was living; that there he exhibited a piece of paper which he claimed was a marriage certificate, and that in the presence of several witnesses a wedding ceremony was performed and that she and John Y. Cunningham were pronounced man and wife.

On cross-examination she stated that she arrived in Beaumont on the bus instead of the train; that Mr. Cunningham had the minister there and the license in his pocket, and that they were married in the daytime within an hour or two after she arrived. She further testified that she was introduced to the minister by Mr. Cunningham, but did not remember his name, nor to what church he belonged; that she was a Baptist and Mr. Cunningham a Methodist; that there were five or six witnesses to the marriage ceremony, two of which were women; that she did not remember the names of any of them; that on that occasion she did not sign a document, nor does she recall a document having been signed by the minister and the witnesses; and that she and Mr. Cunningham lived one or two days at the place where the wedding occurred, but that she did not remember the street number of the house.

It will be noted that in the testimony of the plaintiff with reference to the marriage, there is not a single fact disclosed which might be negatived except the existence of the license. The hour of the day and the day of the month are not fixed; the place where the marriage occurred is not determined; neither the name of the celebrant nor his religious faith could be recalled, and the name of no person present was remembered except John Y. Cunningham, and he is dead.

It was admitted that a search had been made of the marriage records in the county in which Beaumont, Texas, is located, and the surrounding counties, and that no record of the issuance of a license or of the marriage of the plaintiff to J. Y. Cunningham could be found.

After leaving Beaumont the plaintiff and J. Y. Cunningham lived together openly as man and wife, according to her testimony, in Alexandria, Louisiana, New Orleans, Louisiana, Pleasant Hill, Louisiana, Tullos, Louisiana, El Dorado, Arkansas, and Monroe, Louisiana. For more than half of the four years that elapsed between the alleged marriage and the death of J. Y. Cunningham they lived together in the last-named place. They held themselves out to the public as man and wife and the two children which were born to them were held out to the community as their own, and recognized as such.

The legal presumption arising from their conduct in this respect is that they were married and their children legitimate, but that presumption is by no means conclusive. It may be rebutted. If a man and a woman lived together publicly and openly for many years as man and wife in one community, reared and educated their children, held themselves out to the world as lawfully married and their children their legal offspring, and the community consistently accepted them as lawfully married and their children legitimate, a strong presumption arises that a marriage between them actually occurred, and the presumption thus created is difficult to destroy with rebutting evidence.

But, if a man and a woman, as in this case, lived together openly and publicly as man and wife for not more than four years and two months, and for not more than two years and six months in the community, and sufficient time did not elapse in which to rear and educate their children, even though they held themselves out to the world· as lawfully married and their children their lawful offspring, the presumption thereby created that they were in fact married is weak and will yield readily to rebutting evidence.

The testimony of the plaintiff relating to her alleged marriage merely serves to strongly suggest that it did not in fact take place. It is almost inconceivable that after the lapse of less than five years she could remember no fact or circumstance in connection with so important an event in her life that could be corroborated if the celebration did in fact take place. No written evidence of her marriage or that a license had been procured for that purpose could be produced. This latter circumstance should be considered, particularly in view of the improbability of Mr. Cunningham having secured a license to marry at any distant point from Beaumont, Texas, where the marriage is alleged to have been celebrated.

It was stated by the Supreme Court in the case of Oliphant v. Louisiana Long Leaf Lumber Company, 163 La. 606, 112 So. 500, 502:

"Of course, the fact that one seeking to establish a marriage does not produce written evidence showing its celebration is a circumstance to be considered in connection with other circumstances in the case in deciding whether or not the marriage was in fact celebrated."

At the time of the alleged marriage in question, the plaintiff had not been divorced from C. J. Cantrell, and she was admittedly aware that a legal marriage with J. Y. Cunningham could not be consummated. She assumes the position that she was in good faith in marrying J. Y. Cunningham because she believed (with no justification for the belief) that C. J. Cantrell had secured a divorce from her.

When these considerations are weighed in connection with the fact that she admitted to the mother and sister of J. Y. Cunningham that she did not marry him, and assigned a good reason for not having done so, the presumption of marriage— never very strong—was completely destroyed.

The admission referred to was made about three weeks prior to the trial of the case in the lower court. The following is quoted from Miss Lillie Cunningham's testimony:

"A. I asked her the direct question, was she married to my brother, and she said 'No.' I asked her this question 'Why?' She said 'I never got a divorce from my second husband, Cantrell.'"

On cross-examination, Miss Lillie Cunningham was asked the question whether she had any reason to question her brother's alleged marriage, to which question she replied:

"I never knew there was a question except what Mr. Cantrell told me."

Mrs. J. C. Cunningham, mother of J. Y. Cunningham, corroborated the testimony of her daughter, Lillie Cunningham.

As the plaintiff was not in fact married to J. Y. Cunningham, she was neither his legal or putative wife, and recovery in this suit should be denied.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment rejecting plaintiff's demands.